502 So.2d 1114 (1987)
STATE of Louisiana
v.
Dianne GRAY (Two Cases).
Nos. KA-2739, KA-4280.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1987.
*1115 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William A. Marshall, Asst. Dist. Atty., New Orleans, for appellee.
George A. Blair, III, New Orleans, for appellee.
Before GULOTTA, CIACCIO and LOBRANO, JJ.
LOBRANO, Judge.
Defendant, Diane Gray, and her husband were charged by bill of information with two counts of cruelty to juveniles, violations of La.R.S. 14:93. On April 12, 1983, defendant's husband was acquitted on both counts, and defendant was acquitted on one count. No verdict was rendered on the other count. On July 25, 1983 defendant was found mentally competent to stand retrial on count one. That trial took place September 12th and 13th, 1983, and defendant was found guilty on count one by a six-member jury. After the denial of a motion for a new trial, defendant was sentenced to serve ten (10) years at hard labor with credit for time served. This appeal followed.

FACTS:
On the morning of September 16, 1982, Amanda and Michael Gray arrived at Thomas Edison Elementary School between 8:30 a.m. and 8:45 a.m. Amanda's teacher, Mr. Thomas Hamme, became alarmed because the child, then six years old, was limping badly, crying hysterically, had one eye swollen nearly shut and had numerous scratches on her face. Mr. Hamme attempted to elicit from Amanda what had happened to her but she was so hysterical she was unable to speak properly. Unable to calm her, Mr. Hamme took Amanda to the principal's office where she was questioned. At first she said another child had beat her. Believing this to be unlikely, Amanda was questioned further about her injuries and finally stated her mother beat her. The police were notified.
Upon observing Amanda's condition the police requested that Michael be brought to the office. Michael had bruises on his body as well.
Sometime after 9:00 a.m., Detective Joan Charles of the New Orleans Police Department Child Abuse Bureau and two Department of Health and Human Resources social workers, Patrice Green and Celestine Dandridge, interviewed the children. All three testified that both children were frightened and reluctant to speak. Amanda told all three that her mother beat her. Ms. Green testified that she learned of the use of the hammer and chair to beat Amanda at this initial interview. Detective Charles testified that Amanda indicated her mother beat her using her hand. When questioned as to how she received specific bruises and lacerations, Amanda denied knowledge of these. Michael denied any knowledge of his or Amanda's injuries. While playing with a toy, Michael banged the toy on the top of his head and was heard to say, "If you talk to the police I'll beat you on the head." When questioned *1116 as to why he made that statement and what he meant, he refused to answer.
Both children were taken into protective custody and brought to Charity Hospital for treatment. It was not until a second interview was conducted one week later, on September 24th, that Amanda admitted to Detective Charles that her mother used a hammer and chair to beat her. Detective Charles conducted this second interview because she felt further investigation was necessary after discussing the children's injuries with Dr. Winston Levy, who examined them at Charity Hospital the day they were taken into custody.
Drs. Sproels and Levy testified that during their examinations of the children, Amanda stated she had been beaten with a hammer. Dr. Levy's examination was September 16, 1982, the day the authorities became involved and Dr. Sproels' examination was five days later.
Defendant appeals her conviction and sentence alleging the following assignments of error:
1. The trial court erred in allowing various witnesses to testify concerning out of court statements made by the two six-year old victims.
2. The trial court abused its discretion and violated the constitutional prohibition against excessive punishment.

ASSIGNMENT OF ERROR 1:
Hearsay is an out of court statement made by a third party and offered for the truth of its content. State v. Elzie, 351 So.2d 1174 (La.1977); State v. Simmons, 484 So.2d 894 (La.App. 1st Cir.1986). Hearsay is inadmissible evidence unless it falls under an exception to the hearsay rule. La.R.S. 15:434. One such exception is the res gestae exception defined in La. R.S. 15:447 as follows:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
Our Supreme Court has expanded the res gestae exception to include the original complaint of a young child "when the particular facts and circumstances of the case indicate that it was a product of a shocking episode and not a fabrication. The original complaint of the young child is the statement made at the first reasonable opportunity under the particular facts and circumstances of the case." State v. Prestridge, 399 So.2d 564 (La.1981); State v. Adams, 394 So.2d 1204 (La.1981); State v. Hatcher, 372 So.2d 1024 (La.1979); State v. Noble, 342 So.2d 170 (La.1977); State v. Pace, 301 So.2d 323 (La.1974); State v. Garay, 453 So.2d 1003 (La.App. 4th Cir.1984).
The traumatic condition of the child must also be considered in determining the res gestae or first reasonable opportunity for the child to tell his or her story. The initial complaint of a victimized child is often quite traumatic due to the fact that more often than not the abusive experience involved a close relative or friend. State v. Simmons, supra; State v. Adams, supra; State v. Garay, supra.[1]
Amanda was traumatized to the point that she was unable to speak clearly. Amanda's teacher was unable to calm her enough to obtain any meaningful facts. Amanda's admission came the morning after she was beaten. The testimony of virtually every state witness attested to the atrocious nature of the injuries sustained by Amanda. She had bruises over the majority of her body, a fracture around her eye, her foot was so swollen she could barely walk, loop-welt marks were on her legs, arms, chest and back. Her face bore classic typical gag marks caused when defendant gagged her to keep her from crying out, and a burn scar on her buttocks *1117 caused when defendant burned her with a curling iron.
The first people able to calm her were Ms. Green and Ms. Dandridge. This was the first "reasonable" opportunity for Amanda to explain what really happened to her and their testimony falls clearly within the res gestae exception to the hearsay rule. La.R.S. 15:447, supra.; State v. Garay, supra. Detective Charles' testimony as to what Amanda told her during the initial interview is likewise admissible. However, any statements made to Detective Charles by Amanda during the second interview of September 24th constitutes inadmissible hearsay since it goes beyond the first "reasonable opportunity" for the child to state who harmed her. State v. Anderson, 450 So.2d 684 (La.App. 4th Cir. 1984), writ den. 452 So.2d 696. We do not find, however, the admission of this testimony to be reversible error. Any prejudice it created was cured by subsequent corroborating evidence and testimony. State v. Banks, 439 So.2d 407 (La.1983).
The testimony of Drs. Sproels and Levy is clearly admissible as information received as "an integral part of the doctor's examination ..." In the Interest of Gray, 454 So.2d 307 (La.App. 4th Cir.1984).
This assignment of error is without merit.

ASSIGNMENT OF ERROR 2:
Defendant asserts that her maximum ten (10) year sentence violates the constitutional prohibition against excessive punishment.
The penalty provision of La.R.S. 14:93 states as follows: "Whoever commits the crime of cruelty to juveniles shall be fined not more than one thousand dollars or imprisoned with or without hard labor for not more than ten years, or both."
The Louisiana Constitution prohibits the imposition of excessive punishment. Art. 1, Sec. 20. The imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment. State v. Thomas, 447 So.2d 1053 (La.1984); State v. Soco, 441 So.2d 719 (La.1983); State v. Sepulvado, 367 So.2d 762 (La.1979).
A sentence which appears to be severe is considered excessive and unconstitutional if it is "grossly out of proportion to the severity of the crime" or "nothing more than the purposeless and needless imposition of pain and suffering". State v. Brogdon, 457 So.2d 616 (La.1984); State v. Telsee, 425 So.2d 1251 (La.1983).
The trial judge must articulate reasons for an apparently severe sentence tailoring it to the individual offender and the particular offense. State v. Tilley, 400 So.2d 1363 (La.1981). Code of Criminal Procedure Art. 894.1 sets forth criteria to be used by the trial court in its determination. The trial court need not articulate every circumstance cited, but it must indicate that it considered the 894.1 guidelines in tailoring a particular sentence to a particular defendant convicted of a particular crime. State v. Guiden, 399 So.2d 194 (La.1981). Not only the aggravating circumstances but the mitigating circumstances as well must be considered, State v. Franks, 373 So.2d 1307 (La.1979) and the court must state the factual basis underlying its conclusion. State v. Saunders, 393 So.2d 1278 (La.1981). Accordingly, the sentencing record must reflect that the trial judge considered the personal history of the defendant in addition to the seriousness of the crime and the past criminal history of the defendant. State v. Quebedeaux, 424 So.2d 1009 (La.1982), affirmed on remand 446 So.2d 1210 (La.1984); State v. Jones, 398 So.2d 1049 (La.1981); State v. Molinet, 393 So.2d 721 (La.1981).
A review of the record reflects that the trial court considered the evidence presented at trial, pre-sentence report, as well as reports and testimony of several psychologists before imposing sentence. In sentencing defendant, the trial court reiterated the seriousness of the injuries and the needless cruelty inflicted by defendant. The court's comments clearly show its conclusion that defendant was one of the most *1118 egregious of offenders, State v. Brogdon, supra; State v. Quebedeaux, supra.:
"... it was established to the satisfaction of the trier of fact that you, Miss Gray, had abused your daughter, Amanda, and you had gagged her. We saw on the pictures that they had all these cuts going around the mouth of Amanda ... And, in addition to that, evidence was brought out that in order to beat Amanda, chairs were used and hammers and to put it mildly, it shocked the conscious of the court that anybody can think of such methods of punishment, if indeed it is punishment. The court has waited a long time to sentence Miss Gray and my concern was the safety and welfare of the children ... My only concern are the children and its going to take ten years before they are going to reach the age of eighteen. I feel a lot better having Miss Gray away from them."
Thus, the trial court adequately considered the Art. 894.1 guidelines in imposing this particular sentence for this particular defendant. State v. Guiden, supra.
Although not unbridled, the trial judge is given great discretion in sentencing within statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Bradley, 414 So.2d 724 (La.1982); State v. Washington, 414 So.2d 313 (La.1982).
In reviewing the sentence, this court must determine whether this sentence is too severe in light of the particular defendant and the circumstances of the particular crime. State v. Quebedeaux, supra; State v. Jones, supra.
Insofar as the length of the sentence, our Courts have evaluated a number of claims of excessive sentences by defendants' receiving ten year sentences for convictions of cruelty to juveniles where the alleged disciplinary action constitutes nothing more than needless cruelty. The courts have consistently affirmed such sentences.
In State v. Davis, 485 So.2d 981 (La.App. 4th Cir.1986), writ den. 488 So.2d 1019, this court affirmed the maximum sentence where defendant placed her child in scalding water causing second degree burns on both feet, his buttocks and left upper arm. Inflicting grievous injury to a young defenseless child was found to mandate severe punishment, in this case the maximum sentence.
In State v. Meshell, 473 So.2d 935 (La. App. 3rd Cir.1985), a ten year sentence was upheld where a defendant severely beat the victim's buttocks and then rubbed salt into the wounds.
In State v. Helsley, 457 So.2d 707 (La. App. 2nd Cir.1984), a ten year sentence was upheld where a defendant disciplined his twelve-year old daughter by striking her repeatedly with a piece of pipe and a pipe wrench.
In the instant case, defendant, with little or no provocation, gagged and beat her daughter with a chair and a hammer causing severe physical and emotional injuries to her child.
Accordingly, we hold that defendant's assertion that her ten year sentence is excessive in light of the circumstances, including defendant's vehement and continued denial of the perpetration of these acts and the evidence presented at the sentencing hearing, is without merit.
For the foregoing reasons, defendant's conviction and sentence is affirmed.
AFFIRMED.
NOTES
[1] Although the instant case involves physically rather than sexually abused children, the rationale is the same.